No. 14-1189

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FLAME S.A.,

*Plaintiff-Appellee,*

v.

FREIGHT BULK PTE. LTD.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia
No. 13-00658
The Honorable Robert G. Doumar

## BRIEF FOR PLAINTIFF-APPELLEE
## FLAME S.A.

William R. Bennett III
Alan M. Weigel
Lauren B. Wilgus
Nicholas R. Tambone
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

*Attorneys for Plaintiff-Appellee
Flame S.A.*

April 4, 2014

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee Flame S.A. certifies that it is a non-governmental corporation organized and existing under the laws of Switzerland with its principal place of business in Switzerland.

Flame S.A. submits the following statement of its corporate interests and affiliations under Federal Rule of Appellate Procedure 26.1(a) for the use of the judges of this Court:

1.  Flame S.A. is not a publicly held corporate or other publicly held entity.

2.  Flame S.A. does not have any parent corporation.

3.  No publicly held corporation owns ten percent or more of Flame S.A.'s stock.

Dated:  New York, New York
        April 4, 2014

/s/ William R. Bennett III
William R. Bennett III

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION ............................................................................... 1

STATEMENT OF JURISDICTION.......................................................... 2

STATEMENT OF THE ISSUES................................................................ 3

STATEMENT OF THE CASE ................................................................. 3

    A.    Background...................................................................... 3

    B.    Proceedings in the Southern District of New York ............... 5

    C.    Procedural History of this Case............................................. 6

SUMMARY OF ARGUMENT .................................................................... 9

STANDARD OF REVIEW...................................................................... 11

ARGUMENT ...................................................................................... 11

    I.    The District Court Must Give Full Faith and Credit to
        and Enforce the Judgment Entered in the Southern
        District of New York .............................................................. 11

        A.    A Foreign Judgment Recognized in a U.S. District
            Court is Entitled to Full Faith and Credit and
            Should be Enforced as a Domesticated Judgment
            of a Sister State............................................................ 12

        B.    Flame's Admiralty Judgment from the Southern
            District of New York Should Not Be Questioned ........ 15

II.   A District Court's Determination of Subject-Matter
      Jurisdiction is a Question of Federal Procedural Law .........22

      A.   The Question of Subject-Matter Jurisdiction is
           Procedural, and is Resolved Under Federal Law ........22

      B.   *Vitol, S.A. v. Primerose Shipping Co.* and *Blue
           Whale Corp. v. Grand China Shipping Dev. Co.*
           are Consistent With the Established Principle
           of Resolving Questions of Subject-Matter
           Jurisdiction Under Federal Law .................................26

III.  Forward Freight Agreements are Maritime Contracts
      Under Federal Law ................................................................34

      A.   The Essence of a Maritime Contract is Maritime
           Commerce ...................................................................34

      B.   Forward Freight Agreements Concern Maritime
           Commerce ...................................................................40

      C.   Freight Bulk's Contrary Arguments are Not
           Persuasive ..................................................................47

CONCLUSION ...................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Levin,*
   788 F.2d 830 (2d Cir. 1986) ........................................................ 16, 17

*Aetna Life Ins. Co. v. Tremblay,*
   223 U.S. 185 (1912) .................................................................. 12

*Al Fatah Int'l Navigation Co. v. Shivsu Canadian Clear Waters
Tech (P) Ltd.,*
   649 F. Supp. 2d 295 (S.D.N.Y. 2009) .................................... 26

*Alphamate Commodity GMBH v. CHS Europe SA,*
   627 F.3d 183 (5th Cir. 2010) ................................................... 39

*Am. Dredging Co. v. Miller,*
   510 U.S. 443 (1994) .................................................................. 40

*Ambassador Factors v. Rhein-, Maas-, Und See- Schiffahrtskontor
GMBH,*
   105 F.3d 1397 (11th Cir. 1997) ............................................... 39

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
   460 F.3d 434 (2d Cir. 2006) .................................................... 30

*Armada (Sing.) Pte Ltd. v. N. China Shipping Co.,*
   633 F. Supp. 2d 168 (S.D.N.Y. 2009) .................................... 42

*Blue Whale Corp. v. Grand China Shipping Dev. Co.,*
   722 F.3d 488 (2d Cir. 2013) .......................................... *passim*

*Brave Bulk Transp. v. Spot on Shipping Ltd.,*
   No. 07-04546, 2007 WL 3255823
   (S.D.N.Y. Oct. 30, 2007) ........................................... 40, 42, 43

*Bulk Trading S.A. v. Capex Eur. S.A.M.*,
    No. 10-00297, 2011 WL 1088762
    (E.D. La. Mar. 22, 2011) ........................................................ 45, 46, 48

*C. Transport Panamax Ltd. v. N. Am. Steamships Ltd., a.k.a.
N.A.S.L.*,
    No. 06-13178 (RLC) (S.D.N.Y.)............................................... 43

*CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*,
    792 N.E.2d 155 (N.Y. 2003) ................................................... 17

*Compania Maritima Ador, S.A. v. Navico A.G.*,
    173 F. Supp. 839 (S.D.N.Y. 1959)........................................... 37

*D'Amico v. Dry Ltd. v. Primera Maritime (Hellas) Ltd.*,
    No. 09-07840, 2011 WL 1239861
    (S.D.N.Y. Mar. 28, 2011)........................................................ 33, 34, 47

*Daeyang Shipping Co: Ltd. v. Navitrans Maritime Inc.*,
    No. 04-08050 (VM) (S.D.N.Y.) ............................................... 43

*Deiulemar v. Source Link Shipping Co. Ltd*,
    No. 07-02983 (SAS) (S.D.N.Y.) .............................................. 43

*Deiulemar v. Spot On Shipping Ltd.*,
    No. 07-03820 (VM) (S.D.N.Y.) ............................................... 43

*Dry Handy Invs., Ltd. v. Corvina Shipping Co. S.A.*,
    No. 13-00678, 2013 WL 6408388 (E.D. Va. Dec. 6, 2013) ............. 37-38

*Euro Trust Trading S.A. v. Allgrains U.K. Co.*,
    No. 09-04483, 2009 WL 2223581 (S.D.N.Y. July 27, 2009)........ *passim*

*Eurotrade Inc., Liberia v. Source Link Shipping Co. Ltd., BVI*,
    No. 07-3172 (SAS) (S.D.N.Y.) ................................................ 43-44

*Exxon Corp. v. Cent. Gulf Lines, Inc.*,
    500 U.S. 603 (1991) ............................................................... 35

*Farenco Shipping Co. v. Farenco Shipping Pte Ltd.*,
    No. 12-02544, 2012 WL 5614999 (E.D. La. Nov. 15, 2012) .......... 47, 48

*Flame S.A. v. Indus. Carriers, Inc.*,
   777 F. Supp. 2d 717 (S.D.N.Y. 2011) .................................................. 17

*Flame S.A. v. M/V Lynx*,
   No. 10-00278, 2010 U.S. Dist. LEXIS 145880
   (E.D. Tex. June 22, 2010) ...................................................... 29, 44, 46

*Flame S.A. v. Primera Mar. (Hellas) Ltd.*,
   No. 09-08138, 2010 WL 481075
   (S.D.N.Y. Feb. 2, 2010) .................................................. 41, 42, 44, 46

*Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*,
   413 F.3d 307 (2d Cir. 2005) .............................................................. 39

*Foremost Ins. Co. v. Richardson*,
   457 U.S. 668 (1982) ............................................................................ 35

*Fortis Corporate Ins., SA v. Viken Ship Mgmt. AS*,
   597 F.3d 784 (6th Cir. 2010) ............................................................. 40

*Foster v. Neilson*,
   27 U.S. (2 Pet.) 253 (1829) ................................................................ 21

*Harley Mullion & Co. v. Caverton Marine Ltd.*,
   No. 08-5435, 2008 U.S. Dist. LEXIS
   101313 (S.D.N.Y. 2008) ......................................................... 31, 32, 33

*Hilton v. Guyot*,
   159 U.S. 113 (1895) ............................................................................ 14

*Int'l Sea Food, Ltd. v. M/V Campeche*,
   566 F.2d 482 (5th Cir. 1978) ............................................................. 36

*J.A.R., Inc. v. M/V Lady Lucille*,
   963 F.2d 96 (5th Cir. 1992) ............................................................... 35

*James v. M/V EAGLE EXP.*,
   No. 12-00423, 2012 WL 3068791 (S.D. Ala. July 27, 2012) ......... 25, 33

*Kane v. Motor Vessel Leda*,
   491 F.2d 899 (5th Cir. 1974) ............................................................. 37

*Kossick v. United Fruit Co.*,
   365 U.S. 731 (1961) ....................................................... 22, 23, 35, 36

*Medellín v. Texas*,
   552 U.S. 491 (2008) .................................................................. 20, 21

*Miller v. Miller*,
   240 F.3d 392 (4th Cir. 2001) ............................................................ 12

*Nehring v. Steamship M/V Point Vail*,
   901 F.2d 1044 (11th Cir. 1990) ......................................................... 35

*Norfolk S. Ry. Co. v. Kirby*,
   543 U.S. 14 (2004) ................................................................. *passim*

*Otal Invs. Ltd v. M. V. Clary*,
   494 F.3d 40 (2d Cir. 2007) .............................................................. 32

*Pan Oceanic Maritime Inc. v. Source Link Shipping Co. Ltd.*,
   No. 07-3089 (CM) (S.D.N.Y.) ............................................................ 44

*Perseveranza Di Navigazione S.P.A. v. Source Link Shipping Co. Ltd.*, No. 07-3091 (RPP) (S.D.N.Y.) ....................................... 44

*Pioneer Freight Futures Co. v. Marine Trade S.A.*,
   No. 11-10313, 2011 U.S. Dist. LEXIS 157971
   (C.D. Cal. Dec. 20, 2011) ............................................................... 47

*Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*,
   759 F.2d 262 (2d Cir. 1985) ............................................................ 32

*Rush v. Del. & Chesapeake S.S. Co.*,
   10 F. Supp. 497 (E.D. Pa. 1935) ........................................................ 41

*S.C. State Ports Auth. v. Silver Anchor, S.A. (Panama)*,
   23 F.3d 842 (4th Cir. 1994) ............................................................ 36

*S. Pac. Co. v. Jensen*,
   244 U.S. 205 (1917) ................................................................. 10, 24

*Setsea S.P.A. v. Source Link Shipping Co. Ltd.*,
   No. 07-04147 (S.D.N.Y. June 5, 2007) ............................................... 42, 43

*SLS Shipbuilding Co. v. Ionia Mgmt. S.A.*,
   Misc. No. 11-271, 2011 WL 2652365 (S.D. Tex. July 5, 2011) ... *passim*

*Society of Lloyd's v. Ashenden*,
   233 F.3d 473 (7th Cir. 2000).................................................. 17

*Sw. Marine of San Francisco, Inc. v. United States*,
   896 F.2d 532 (Fed. Cir. 1990) ............................................. 36

*T & O Shipping, Ltd. v. Lydia Mar. Shipping Co. S.A.*,
   415 F. Supp. 2d 310 (S.D.N.Y. 2006).................................... 32

*Taiwan Maritime Transport Co. Ltd. v. Navitrans Maritime Inc.
   and Navigation Maritime Inc.*, No. 06-13564 (RJH) (S.D.N.Y.) ........ 44

*Transfield ER Futures Ltd. v. Deiulemar Shipping S.P.A.*,
   Nos. 11-00099, 11-00754, 2012 WL 123286
   (E.D. La. Jan. 17, 2012) ............................................... 45, 48

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
   825 F.2d 709 (2d Cir. 1987) .......................................... 28, 34

*Vill. of Bald Head Island v. United States Army Corps of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013)................................................ 39

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*,
   708 F.3d 527 (4th Cir. 2013)........................................ *passim*

*Wall St. Traders, Inc. v. Sociedad Espanola de Construccion
   Naval*,
   245 F. Supp. 344 (S.D.N.Y. 1964)................................... 32, 33

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
   348 U.S. 310 (1955) ......................................................... 16

*Williamson v. Recovery L.P.*,
   542 F.3d 43 (2d Cir. 2008) ................................................ 39

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996)......................................................... 40

CONSTITUTION

U.S. Const. art. III, § 2, cl. 1 ...................................................... 1, 22, 23

STATUTES & RULES

9 U.S.C. §§ 201-208 ...................................................................... 13

9 U.S.C. § 203 ................................................................................. 13

28 U.S.C. § 1292(b) .......................................................................... 2

28 U.S.C. § 1333 ..................................................................... *passim*

28 U.S.C. § 1963 ....................................................................... 2, 15

Admiralty Rule B ................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................. 27

Fed. R. Civ. P. 69 ........................................................................... 18

N.Y. C.P.L.R. §§ 5301-5309 ............................................... 5, 14, 16

N.Y. C.P.L.R. § 5304 .............................................................. 14, 16

Va. Code §§ 8.01-465.6-8.01-465.13 ........................................... 14

Va. Code § 8.01-464.10 .................................................................. 14

OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 98 (1971) ...................... 12, 13

Restatement (Third) of The Foreign Relations Law of the United
    States § 481(2) (1987) ........................................................ 15

UFCMJRA, Prefatory Note (1962), available at:
    http://www.uniformlaws.org/shared/docs/foreign%20country%2
    0money%20judgments%20recognition/ufcmjra_final_05.pdf
    (last visited April 1, 2014) ................................................ 14

Zeynalova, *The Law on Recognition and Enforcement of Foreign Judgments: Is it Broken and How Do We Fix It?*, 31 Berkeley J. Int'l L. 150 (2013) ............................................................. 12, 13, 14, 15

## INTRODUCTION

This case involves enforcement in the District Court of a judgment entered in the Southern District of New York, which had undisputed admiralty subject-matter jurisdiction under 28 U.S.C. § 1333. The District Court's power to enforce the judgment is provided by Congress, and is not questioned on appeal. It makes no difference that the Southern District of New York entered the judgment in recognition of an English judgment—the District Court must give full faith and credit to the admiralty judgment of the Southern District of New York.

Defendant-Appellant Freight Bulk Pte Ltd. ("Freight Bulk") incorrectly argues this case raises a choice-of-law question. The determination of subject-matter jurisdiction is a distinct question of federal procedural law. The substantive law of a foreign country—especially where the applicable law in that country is uncertain—does not govern the subject-matter jurisdiction inquiry of a United States court. To hold otherwise would permit foreign law to impinge on the congressional grant of original jurisdiction to the district courts over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); *see* U.S. Const. art. III, § 2, cl. 1.

1

Freight Bulk argues in the alternative that the Forward Freight Agreements ("FFAs") giving rise to this fraudulent conveyance and alter ego lawsuit are not "maritime contracts." Freight Bulk's contention wrongly ignores both the judgment of the Southern District of New York, to which the District Court is required to give full faith and credit, and the prevailing view of the great majority of district courts that have held that FFAs are maritime contracts.[1]

The reasoning of the District Court's Opinion and Order is based on uncontroversial principles of federal law, and should be affirmed.

## STATEMENT OF JURISDICTION

This is an action to enforce a money judgment entered in the Southern District of New York. The Southern District of New York had admiralty subject-matter jurisdiction under 28 U.S.C. § 1333. The judgment of the Southern District of New York was registered for enforcement in the Eastern District of Virginia under 28 U.S.C. § 1963.

The District Court below correctly asserted subject-matter jurisdiction over this action under 28 U.S.C. § 1333. This Court has jurisdiction to review the District Court's Opinion and Order under 28 U.S.C. § 1292(b).

---

[1] The District Court was emphatic on this point. J.A. 427-28.

2

## STATEMENT OF THE ISSUES

(1)    Whether a U.S. district court should follow federal procedural law rather than the substantive law of a foreign country when determining subject-matter jurisdiction over an action to enforce a money judgment of another U.S. district court.

(2)    Whether a Forward Freight Agreement is a maritime contract under federal law.

## STATEMENT OF THE CASE

### A.    Background

Plaintiff-Appellee Flame S.A. ("Flame") is a Swiss company in the international maritime coal trading business. J.A. 404-22. Flame uses ships to transport coal. As part of its shipping and trading activities, Flame entered into four Forward Freight Agreements with Industrial Carriers, Inc. ("Industrial Carriers") dated March 12, 2008, May 19, 2008, August 14, 2008, and August 29, 2008. J.A. 408 ¶ 24. Industrial Carriers is a Marshall Islands company with its principal place of business in the Ukraine, but at all relevant times was registered to do business in New York. J.A. 13, 38.

3

FFAs are derivative contracts. J.A. 408 ¶ 25. The contract values are derived from a freight rate for a specific type of vessel, a "Panamax Bulker," and a physical trade route that receives a daily assessment on one of the Baltic Exchange Indices. J.A. 408 ¶ 25. Like many other maritime traders that ship cargo, Flame entered into FFAs to protect itself against fluctuations in the cost of shipping. J.A. 408 ¶ 25.

In mid to late September 2008, freight rates in the shipping market began to crash. J.A. 408 ¶ 27. Because of the market crash, Industrial Carriers was unable to meet its financial obligations under the FFAs. J.A. 408 ¶ 27. On October 15, 2008, Industrial Carriers filed a bankruptcy application in the Piraeus Multimember Court of First Instance (Ex-Parte Jurisdiction—Admiralty Division, Piraeus, Greece).[2] J.A. 408-09 ¶ 28. Industrial Carriers' bankruptcy application constituted a breach, and caused an automatic termination of the FFAs. J.A. 409 ¶¶ 29-31. The FFAs contained a forum selection clause requiring the agreements be construed under English law, and any

---

[2] Industrial Carriers' bankruptcy application was ultimately rejected. J.A. 410 ¶ 37.

dispute subject to the jurisdiction of the High Court of Justice in London, England.[3] J.A. 245 ¶ 15, 251 ¶ 15, 258 ¶ 16, 268 ¶ 15.

On or about November 12, 2010, Flame initiated an action against Industrial Carriers in the English High Court of Justice, Queen's Bench Division, Commercial Court to recover the amounts due to Flame under the FFAs. J.A. 38-50; 409 ¶ 32. On December 13, 2010, the High Court of Justice entered a judgment against Industrial Carriers, in favor of Flame, in the amount of USD $19,707,118.36. J.A. 52-53; 409 ¶ 33.

## B.    Proceedings in the Southern District of New York

On December 23, 2010, Flame initiated an action in the Southern District of New York, asserting admiralty subject-matter jurisdiction under 28 U.S.C. § 1333, by filing a petition to recognize the $19,907,118.36 judgment under N.Y. C.P.L.R. §§ 5301-5309. J.A. 369-72. The action was assigned to the Honorable Lewis A. Kaplan. J.A. 369-72. On February 28, 2011, George M. Chalos, Esquire entered an appearance on behalf of Industrial Carriers, and filed a motion to dismiss. J.A. 370. On April 13, 2011, Judge Kaplan denied Industrial Carriers' motion to dismiss. J.A. 374-79. On May 6, 2011, Industrial

---

[3] This contract provision is England's only connection to this lawsuit.

Carriers' attorneys moved to withdraw as counsel, which Judge Kaplan granted on June 28, 2011. J.A. 371.

On August 2, 2011, Flame filed a motion to confirm and recognize the English judgment. J.A. 371. On September 14, 2011, Judge Kaplan granted Flame's unopposed motion and directed entry of a judgment. J.A. 381. On October 4, 2011, judgment was entered against Industrial Carriers confirming and recognizing the English judgment in the amount of USD $19,907,118.36. J.A. 383.

On October 10, 2013, counsel for Flame wrote to the Clerk of Court of the Eastern District of Virginia, requesting that the Clerk of Court register the $19,907,118.36 judgment of the Southern District of New York. J.A. 62. On October 11, 2013, the Clerk of Court registered Flame's judgment from the Southern District of New York. J.A. 60.

## C.   Procedural History of this Case

On November 22, 2013, Flame initiated this action in the District Court to enforce the $19,907,118.36 judgment by filing a Complaint against Industrial Carriers, Freight Bulk, and Vista Shipping, Inc. ("Vista"), asserting admiralty subject-matter jurisdiction under 28

6

U.S.C. § 1333.[4] J.A. 17-33. Flame alleges that Industrial Carriers fraudulently conveyed a great amount of assets to Vista—and eventually Freight Bulk—in order to avoid Flame's $19,907,118.36 judgment, and that Freight Bulk and Vista are alter egos of Industrial Carriers.[5] J.A. 17-33. On November 22, 2013, Flame also filed a Motion under Supplemental Rule B to attach Freight Bulk's vessel, the M/V CAPE VIEWER, which was lying in port in Norfolk, Virginia. J.A. 3.

On the same date, November 22, 2013, the District Court granted Flame's Motion for an Order of Attachment, entered an Order of Attachment on the M/V CAPE VIEWER, and appointed a substitute custodian to replace the U.S. Marshal. J.A. 3.[6]

---

[4] On January 9, 2014, Flame filed an Amended Complaint joining a Ukrainian national named Viktor Baranskiy as a defendant. Industrial Carriers, Vista, and Baranskiy are not participating in the District Court proceedings, and are not parties to this appeal.

[5] Industrial Carriers, Freight Bulk, and Vista are controlled by Viktor Baranskiy and his father, Sergei Baranskiy. Viktor Baranskiy testified at his December 12, 2013 deposition that, despite the shipping market having one of the worst financial downturns in history, he was able to build Vista into an international shipping empire worth in excess of $100 million after his mother gave him, in 2008 at age twenty-three, a suitcase containing $1 million in cash. *See* District Court ECF No. 51-3 at 136:17-137:10; 144:8-15.

[6] As of the date of this brief, the M/V CAPE VIEWER remains under attachment and is still docked in Norfolk.

On December 2, 2013, Freight Bulk, represented by George M. Chalos, Esquire (Industrial Carriers' former counsel), filed a Motion to Vacate the Order of Attachment. J.A. 4. Freight Bulk argued that under English law, FFAs are not maritime contracts; thus, the District Court lacked admiralty subject-matter jurisdiction to enforce the English judgment. Freight Bulk also argued that FFAs are not maritime contracts under federal law. The District Court held several hearings on Freight Bulk's Motion, the parties exchanged preliminary discovery, and the Motion was fully briefed. On January 10, 2014, the District Court denied Plaintiff's Motion, holding: (1) federal law, not English law, controls the inquiry into admiralty subject-matter jurisdiction; (2) FFAs are maritime contracts under federal law; and (3) the court was enforcing the judgment of another U.S. district court, which was also sitting in admiralty. J.A. 423-29.

Recognizing that this Court has never ruled on whether federal procedural law or foreign substantive law should control the inquiry into subject-matter jurisdiction, the District Court certified its Order for an interlocutory appeal. J.A. 429. On January 16, 2014, Freight Bulk petitioned the Court for permission to appeal. No. 14-111, ECF No. 2.

8

On March 4, 2014, the Court granted Freight Bulk's petition, and transferred this case to docket number 14-1189. J.A. 430.

## SUMMARY OF ARGUMENT

This is an action to enforce an admiralty judgment entered in the Southern District of New York. The Eastern District of Virginia correctly gave full faith and credit to this judgment of a sister district court. Moreover, the District Court's inquiry into subject-matter jurisdiction is a distinct question of federal procedural law. Under no circumstances should foreign law dictate to the federal judiciary the determination of admiralty subject-matter jurisdiction. Under federal law, the District Court has subject-matter jurisdiction over this case because Forward Freight Agreements are maritime in nature.

I.    All fifty U.S. states have codified a procedure for the recognition and enforcement of foreign court judgments. It is a well-established principle of law that foreign judgments, once recognized by a U.S. court, are "domesticated," and are equal to any other judgment entered by a U.S. court. Flame's domesticated judgment, which has been registered in the Eastern District of Virginia, is entitled to full faith and credit, and must have the same effect as a judgment entered

by the District Court. Freight Bulk's position on appeal denies the judgment of the Southern District of New York the full faith and credit to which it is entitled.

II.  A federal court's inquiry into subject-matter jurisdiction is a question of federal procedural law. The U.S. Constitution empowers the federal judiciary to hear all admiralty and maritime cases. The U.S. Supreme Court in *Southern Pacific Co. v. Jensen*, 244 U.S. 205 (1917) interpreted this constitutional provision to advance the important objective of national uniformity in the application of maritime law. To ensure uniformity, the majority of federal courts have held that the determination of admiralty subject-matter jurisdiction is a question of federal procedural law. To hold otherwise would allow foreign law to infringe on a federal court's power to hear "all cases of admiralty and maritime jurisdiction." This principle was recently confirmed by the Second Circuit in *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488 (2d Cir. 2013), and is consistent with this Court's recent decision in *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527 (4th Cir. 2013).

III. Forward Freight Agreements are maritime contracts. The U.S. Supreme Court in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004) held that the focus of the admiralty subject-matter jurisdiction inquiry is whether the primary objective of the contract was maritime commerce. Forward Freight Agreements are sufficiently part of the business of maritime commerce to confer admiralty subject-matter jurisdiction on the District Court. The great majority of district courts that have scrutinized whether Forward Freight Agreements are maritime contracts have held that FFAs are maritime in nature, as they are directly linked to maritime service and transactions.

## STANDARD OF REVIEW

"An issue of the district court's subject matter jurisdiction is a question of law that the Court reviews *de novo*." *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 533 (4th Cir. 2013).

## ARGUMENT

### I.    The District Court Must Give Full Faith and Credit to and Enforce the Judgment Entered in the Southern District of New York

This is an action to enforce, in the Eastern District of Virginia, an admiralty judgment entered in the Southern District of New York.

11

Freight Bulk's appeal does not call into question either the District
Court's obligation to give full faith and credit to the judgment of the
Southern District of New York, or the District Court's power to enforce
the judgment. Instead, Freight Bulk's appeal raises choice-of-law issues
that are inapplicable under the facts of this case.

### A.    A Foreign Judgment Recognized in a U.S. District Court is Entitled to Full Faith and Credit and Should be Enforced as a Domesticated Judgment of a Sister State

In the United States, every judgment issued in either a foreign
country or another U.S. state is considered a "foreign judgment." Yuliya
Zeynalova, *The Law on Recognition and Enforcement of Foreign
Judgments: Is it Broken and How Do We Fix It?*, 31 Berkeley J. Int'l L.
150, 154 (2013). The Full Faith and Credit clause of the U.S.
Constitution does not automatically apply to the judgments of foreign
courts, unlike the decision of another U.S. state or federal court. *See
Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185, 190 (1912); *Miller v.
Miller*, 240 F.3d 392, 400 (4th Cir. 2001) (citing Restatement (Second) of
Conflict of Laws § 98 cmt. b (1971)).

For a foreign court judgment to be entitled to full faith and credit
in the United States, so that it may be enforced by U.S. courts, a

judgment creditor must take steps to "recognize" the judgment. "To 'recognize' a foreign judgment is in essence to domesticate it, thus making it equal to any other judgment produced by a U.S. court, as well as to judgments of other state courts that benefit from the Full Faith & Credit Clause." Zeynalova, *Recognition and Enforcement of Foreign Judgments*, *supra*, at 155; *see* Restatement (Second) of Conflict of Laws § 98 cmt. f ("A foreign nation judgment which meets the conditions [of recognition] . . . will be given the same degree of recognition as a sister State judgment . . . so far as the immediate parties and the underlying cause of action are concerned.").

Judgment creditors accomplish the recognition of foreign court judgments through state law. No federal law provides a procedure to recognize a foreign court judgment as a domestic judgment.[7] Zeynalova, *Recognition and Enforcement of Foreign Judgments*, *supra*, at 155-63.

---

[7] Compare the absence of federal law governing the recognition and enforcement of foreign court judgments with the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"). The United States has codified the New York Convention at 9 U.S.C. §§ 201-208, and the New York Convention is enforced as federal law. Any action or proceeding to enforce a foreign arbitration award under the New York Convention "shall be deemed to arise under the laws and treaties of the United States." *Id.* § 203.

13

All fifty states have codified "the circumstances under which foreign judgments are to be recognized and enforced." *Id.* at 156. Many states, including New York and Virginia, have adopted the Uniform Foreign Country Money-Judgments Recognition Act of 1962 ("UFCMJRA"). *See* N.Y. C.P.L.R. §§ 5301-5309; Va. Code §§ 8.01-465.6-8.01-465.13.

The UFCMJRA "provides that a judgment entitled to recognition will be enforceable in the same manner as the judgment of a court of a sister state which is entitled to full faith and credit." UFCMJRA, Prefatory Note (1962), available at:    http://www.uniformlaws.org/ shared/docs/foreign%20country%20money%20judgments%20recognition /ufcmjra_final_05.pdf (last visited April 1, 2014). Under Section 4 of the UFCMJRA, a court may not recognize a foreign court judgment if the judgment fails to meet U.S. standards of due process. *See* N.Y. C.P.L.R. § 5304; Va. Code § 8.01-464.10.[8] A judgment creditor seeking to recognize a foreign court judgment under the UFCMJRA must initiate a new action against the judgment debtor in a U.S. court, and then prove the existence of a final, conclusive foreign judgment through an

---

[8] In effect, this provision of the UFCMJRA codifies the holding of the U.S. Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 202 (1895). *See* Zeynalova, *Recognition and Enforcement of Foreign Judgments*, *supra*, at 157.

affidavit or other evidence. Zeynalova, *Recognition and Enforcement of Foreign Judgments*, *supra*, at 159.

Once a judgment has been recognized, it may be enforced "in accordance with the procedure for enforcement of judgments applicable where enforcement is sought." Restatement (Third) of The Foreign Relations Law of the United States § 481(2) (1987). "A proceeding to enforce a foreign judgment normally takes the form of an action by the judgment creditor to collect a sum due from the judgment debtor under a judgment rendered in another state." *Id.* cmt. b.

Under federal law, a money judgment entered in a district court may be registered, for enforcement purposes, in any other district, after the judgment becomes final. 28 U.S.C. § 1963. "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." *Id.*

### B.     Flame's Admiralty Judgment from the Southern District of New York Should Not Be Questioned

As stated *supra*, on December 13, 2010, the English High Court of Justice, Queen's Bench Division, Commercial Court Registry, entered a judgment for Flame against Industrial Carriers, and ordered Industrial Carriers to pay Flame USD $19,907,118.36. On December 23, 2010,

Flame initiated an action in the Southern District of New York, before the Honorable Lewis A. Kaplan, by filing a Petition to recognize the $19,907,118.36 judgment under N.Y. C.P.L.R. §§ 5301-5309.[9] Flame's Petition asserted that the Southern District of New York had admiralty and maritime subject-matter jurisdiction under 28 U.S.C. § 1333.

On February 28, 2011, Industrial Carriers, represented by George M. Chalos, Esquire, filed a motion to dismiss the petition for failure to state a claim, arguing that Judge Kaplan should refuse to recognize the judgment under N.Y. C.P.L.R. § 5304. Industrial Carriers' memorandum of law in support of the motion cites the following test from *Ackerman v. Levin*, 788 F.2d 830, (2d Cir. 1986):

> [A] plaintiff seeking enforcement of a foreign country judgment granting or denying recovery of a sum of money must establish *prima facie:* (1) a final judgment, conclusive and enforceable where rendered; **(2) subject matter jurisdiction**; (3) jurisdiction over the parties or the *res;* and (4)

---

[9] Because no federal law—admiralty or non-admiralty—governs the recognition of foreign court judgments, a federal court must apply state law to recognize the judgment. In a federal action to recognize a foreign judgment, where the district court has admiralty subject-matter jurisdiction under 28 U.S.C. § 1333, the district court may apply state law in the absence of a controlling rule of general maritime law. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 319-20 (1955).

16

> regular proceedings conducted under a system
> that provides impartial tribunals and procedures
> compatible with due process.

*Id.* at 842 n.12 (emphasis added). Despite citing this test, Industrial
Carriers did not dispute Judge Kaplan's subject-matter jurisdiction,
arguing instead that it did not have notice of the English proceedings.

On April 13, 2011, Judge Kaplan denied Industrial Carriers'
motion to dismiss. Judge Kaplan was not persuaded by Industrial
Carriers' argument that it did not have proper notice of the English
action. Industrial Carriers' alleged lack of notice was only found in its
"unsworn memorandum of law," and although the memorandum of law
promised "a forthcoming declaration" from a former director of
Industrial Carriers, no declaration was ever filed. *Flame S.A. v. Indus.
Carriers, Inc.*, 777 F. Supp. 2d 717, 719 (S.D.N.Y. 2011). Judge Kaplan
also held: "Any suggestion that [England's] system of courts does not
provide impartial tribunals or procedures compatible with the
requirements of due process of law borders on the risible." *Id.* at 719-20
(quoting *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476 (7th Cir.
2000); *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 792 N.E.2d 155,
160 (N.Y. 2003)).

On May 6, 2011, counsel for Industrial Carriers filed a motion to withdraw as counsel. On June 28, 2011, Judge Kaplan granted counsel's motion to withdraw, and warned Industrial Carriers that if new counsel was not obtained, a default judgment may be entered. No replacement counsel ever entered an appearance for Industrial Carriers.

On August 2, 2011, Flame filed a motion to confirm and recognize the English judgment. Flame's memorandum of law accompanying the motion briefed Judge Kaplan on the nature of Forward Freight Agreements, and argued that the FFAs provided the Court with subject-matter jurisdiction under 28 U.S.C. § 1333. S.D.N.Y. No. 10-09557, ECF No. 19. The motion was also accompanied by the declaration of Graeme Lloyd, an English solicitor, who swore to the finality and authenticity of the English judgment.[10] S.D.N.Y. No. 10-09557, ECF No. 20.

On September 14, 2011, Judge Kaplan granted Flame's unopposed motion and directed entry of judgment. On October 4, 2011, judgment

---

[10] Flame's motion also cited Federal Rule of Civil Procedure 69 as a basis for recognition of the English Judgment. Rule 69(a)(1) provides, in relevant part: "The procedure on execution [of a money judgment]—and in proceedings supplementary to and in aid of judgment or execution— must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." The Rule makes no mention of applying the law of the state (or foreign country) where the judgment was originally entered.

was entered against Industrial Carriers confirming and recognizing the English judgment in the amount of USD $19,907,118.36.

On October 11, 2013, the Clerk of Court of the Eastern District of Virginia registered Flame's judgment from the Southern District of New York. J.A. 60-65. On November 22, 2013, Flame initiated this action to enforce the judgment of the Southern District of New York by attaching Freight Bulk's vessel, the M/V CAPE VIEWER, under Supplemental Rule B. After Freight Bulk moved to vacate the order of attachment, on January 10, 2014, the District Court denied Freight Bulk's motion to vacate the order of attachment.

Freight Bulk has appealed the District Court's January 10, 2014 Order. Although the District Court reasoned, in part, that it has subject-matter jurisdiction over this action because it is simply enforcing a judgment of "a United States District Court, which . . . was filed under that court's admiralty jurisdiction," Freight Bulk does not question this reasoning on appeal. J.A. 428. Instead, Freight Bulk frames this case as a choice of law issue, and asks this Court to hold that a foreign country's law should dictate a U.S. court's inquiry into

subject-matter jurisdiction. Freight Bulk's position is a diversion from the established principles of law that control the facts of this case.

The notion that a recognized foreign judgment becomes "domestic law" is confirmed by the reasoning of the U.S. Supreme Court in *Medellín v. Texas*, 552 U.S. 491 (2008). Medellín was a prisoner convicted of capital murder and sentenced to death. He challenged his conviction on the basis that the International Court of Justice ("ICJ") issued a decision holding that the United States violated the Vienna Convention by failing to inform fifty-one Mexican nationals, including Medellín, of their rights under the Vienna Convention.

The United States was obligated under a number of treaties to submit to ICJ jurisdiction with regard to Vienna Convention disputes. *Id.* at 504. The issue before the Supreme Court was whether these treaty obligations of the United States under *international* law had automatic *domestic* legal effect, such that the judgment of the ICJ automatically applied in state and federal courts. *Id.*

The Court held that the obligations of the United States under these particular treaties were not "self-executing," meaning the treaties were not "equivalent to an act of the legislature." *Id.* at 504-05 (citing

*Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 315 (1829)). Although the United States had international commitments under the treaties, the treaty obligations were not domestic law. *Id.* Thus, the international treaties did not provide for "direct enforcement in domestic courts." *Id.* at 513. In reaching this conclusion, the Court also held:

> **Our holding does not call into question the ordinary enforcement of foreign judgments or international arbitral agreements.** Indeed, we agree with Medellín that, as a general matter, "an agreement to abide by the result" of an international adjudication—or what he really means, an agreement to give the result of such adjudication domestic legal effect—can be a treaty obligation like any other, so long as the agreement is consistent with the Constitution. . . . The point is that the particular treaty obligations on which Medellín relies do not of their own force create domestic law.

*Id.* at 519-20 (emphasis added).

Flame did not obtain its judgment in the Southern District of New York under an international treaty. Judge Kaplan entered the judgment under domestic law—the law of New York. But as *Medellín* demonstrates, even certain international treaties can have domestic legal effect. Certainly, the recognition of a foreign judgment under New York law also has domestic legal effect. Freight Bulk's position denies

the judgment of the Southern District of New York the full faith and

credit to which it is entitled.

## II. A District Court's Determination of Subject-Matter Jurisdiction is a Question of Federal Procedural Law

### A. The Question of Subject-Matter Jurisdiction is Procedural, and is Resolved Under Federal Law

The U.S. Constitution empowers federal courts to hear all

admiralty or maritime cases. U.S. Const. art. III, § 2, cl. 1. This case is

an admiralty case under federal law, but Freight Bulk argues it is not

an admiralty case under English law, and contends that "the law of the

nation that issued the judgment determines whether the action is

regarded as maritime for purposes of U.S. law."[11] Freight Bulk Opening

---

[11] In its opening brief, Freight Bulk attempts to support this argument
by referring the Court to "'an established rule of ancient
respectability' . . . that predates the Constitution's establishment of
maritime jurisdiction and has been recognized by the Supreme Court
since the eighteenth century. . . ." Freight Bulk Opening Br. at 27
(citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961)). Freight
Bulk's citation to *Kossick* is severely misleading. In context, this
quotation from *Kossick* states:

> With respect to respondent's alleged agreed
> undertaking, as the case comes to us, petitioner,
> on the one hand, does not deny the contract's
> invalidity under the New York Statute of Frauds,
> if state law controls, nor, on the other hand, can
> its validity well be doubted, though the alleged
> agreement was not reduced to writing, if

Br. at 19. This position is an infringement on a federal court's power to hear all cases of admiralty or maritime jurisdiction, as it would permit foreign law to dictate a federal court's inquiry into its admiralty subject-matter jurisdiction, and is in direct conflict with the Second Circuit's reasoning in *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488 (2d Cir. 2013).

The U.S. Constitution, Article III, Section 2, Clause 1 provides, in relevant part:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; . . . —**to all Cases of admiralty and maritime Jurisdiction** . . . .

(emphasis added). Congress has granted federal district courts original jurisdiction under 28 U.S.C. § 1333, which provides, in relevant part:

---

> maritime law controls. For it is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law.

*Kossick*, 365 U.S. 731 at 733-34.

It should be noted that counsel for Freight Bulk was admonished on the record by the District Court for two earlier instances of misleading case citations to the District Court during this litigation. *See* Transcript of Proceedings held on February 21, 2014, District Court ECF No. 75, at 6:3-25.

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> **(1) Any civil case of admiralty or maritime jurisdiction**, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(emphasis added).

These hallmarks of the federal judiciary are critical to the important objective of national uniformity in the application of U.S. maritime law. *See S. Pac. Co. v. Jensen*, 244 U.S. 205, 216-17 (1917) (discussing "the very uniformity in respect to maritime matters which the Constitution was designed to establish"). Following the need for uniformity, the majority of federal courts have held the question of subject-matter jurisdiction is a procedural question that must be decided under U.S. federal law. For instance, in *Euro Trust Trading S.A. v. Allgrains U.K. Co.*, No. 09-04483, 2009 WL 2223581 (S.D.N.Y. July 27, 2009), the court held:

> Whether a case falls within the scope of [Rule A of] the federal Supplemental Rules for Maritime and Admiralty Claims is manifestly a question of United States federal law calling for the interpretation of procedural rules adopted by the United States. . . . **It does not matter how the case would be characterized under the law**

> **of some other country, even if that country's law provides the rules governing the substance of the claim.**

*Id.* at *3; *see Blue Whale Corp.*, 722 F.3d at 494; *James v. M/V EAGLE EXP.*, No. 12-00423, 2012 WL 3068791, at *6 (S.D. Ala. July 27, 2012) (finding no grounds for maritime attachment under different factual circumstances than this case, but holding that "Rule B provides a *specific procedural remedy*, not available in other federal civil cases, in cases that are within the jurisdiction of the federal court *because of their maritime nature*") (emphasis in original); *SLS Shipbuilding Co. v. Ionia Mgmt. S.A.*, Misc. No. 11-271, 2011 WL 2652365, at *2 (S.D. Tex. July 5, 2011).

The Second Circuit and courts in the Fifth Circuit and the Eleventh Circuit are in harmony with respect to the issue of whether a district court, in determining whether it has subject-matter jurisdiction, must apply U.S. federal law to procedural issues.

The District Court's opinion is consistent with the well-reasoned analyses advanced by every federal court that has considered it. Indeed, no Court of Appeals has ever ruled in accordance with Freight Bulk's argument. Freight Bulk's position is contrary to *Euro Trust*, as it asks

the Court to characterize this case under the law of England, which contradicts established federal law. *See Al Fatah Int'l Navigation Co. v. Shivsu Canadian Clear Waters Tech (P) Ltd.*, 649 F. Supp. 2d 295, 299 n.4 (S.D.N.Y. 2009) ("The subject matter jurisdiction of federal courts is limited and supplied by federal statutes; it could not possibly be supplied by foreign law.") *vacated on other grounds*, 2009 WL 6353886 (S.D.N.Y. Nov. 19, 2009).

### B.    *Vitol, S.A. v. Primerose Shipping Co.* and *Blue Whale Corp. v. Grand China Shipping Dev. Co.* are Consistent With the Established Principle of Resolving Questions of Subject-Matter Jurisdiction Under Federal Law

While the facts of *Vitol* are distinguishable to the case at bar, the Fourth's Circuit's legal reasoning under *Vitol* is consistent with Flame's position. Freight Bulk stretches the holding of *Vitol* to fit with its position on this appeal, but its characterization of *Vitol* is wrong, and undermines the great majority of cases that have considered this issue.

In *Vitol*, plaintiff-appellant Vitol, S.A. ("Vitol") brought an action against Capri Marine, Ltd. ("Capri") in the English High Court of Justice, Queen's Bench Division, Commercial Court, alleging that Capri breached certain warranties of seaworthiness, resulting in an oil spill

26

and resulting damages. Vitol prevailed, and obtained a judgment in the amount of $6.1 million, plus costs and interest.

On December 23, 2009, Vitol filed a verified complaint against Spartacus Navigation Corp. and Primerose Shipping Company (collectively "S & P"), as alter egos of Capri, for recognition and enforcement of the English judgment. Vitol also filed a motion under Supplemental Rule B requesting an order of attachment on a vessel owned by Spartacus, the M/V THOR. The district court granted the motion, and attached the M/V THOR.

Later, S & P moved to vacate the order of attachment, contending Vitol failed to state an admiralty claim, and therefore the district court lacked subject-matter jurisdiction over the proceedings. The district court held it had subject-matter jurisdiction over the proceedings. However, the court held that Vitol failed to state a claim upon which relief may be granted, and dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6).

The court permitted Vitol to amend its complaint. S & P again moved to vacate the attachment and dismiss the amended verified complaint. The court granted S & P's motions, and Vitol appealed.

27

On appeal, S & P argued that the court lacked admiralty subject-matter jurisdiction because the English judgment was issued by the Queen's Bench Division *Commercial* Court, rather than the *Admiralty* Court. S & P asked this Court to hold that "the choice of forum in England, not the subject matter of the underlying claim, is dispositive of whether jurisdiction lies with the district court pursuant to 28 U.S.C. § 1333." *Vitol*, 708 F.3d at 535. This Court found this argument to be "unpersuasive and unsupported," and focused on "form at the expense of substance." *Id.* Instead, the Court held "the dispositive question is not whether the English Judgment issued from an "admiralty court," but rather, whether the claim itself is "maritime in nature." *Id.* (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987)).

*Vitol* is consistent with Flame's position. Nothing in *Vitol* suggested that the Court should follow English law at the expense of federal law to determine "whether the claim itself is maritime in nature." This was the issue addressed in *Blue Whale Corp.*, 722 F.3d at 494 ("what is clear is that federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty. . . . This

question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law"); *Euro Trust*, 2009 WL 2223581, at *3 (whether a district court has admiralty jurisdiction "is manifestly a question of United States federal law calling for the interpretation of procedural rules adopted by the United States. . . . It does not matter how the case would be characterized under the law of some other country, even if that country's law provides the rules governing the substance of the claim); and *SLS Shipbuilding Co.*, 2011 WL 2652365 at *4 ("whether a claim is considered maritime for purposes of Rule B is a question of federal law").[12]

In *Vitol*, unlike here, the parties did not dispute that the underlying claim was "maritime in nature." This Court's holding in

---

[12] The Court should not be concerned that this claim may not invoke English admiralty jurisdiction. English admiralty law is statutory—a claim is considered "admiralty" if it meets specific criteria defined by legislation. J.A. 110. By contrast, as this Court held in *Vitol*, the general maritime law of the United States is provided by common law, and a claim is considered "admiralty" if it is "maritime in nature." It should be no surprise certain claims that are "maritime in nature" under federal law do not meet the legislated criteria of English law. Nevertheless, it is not clear that FFAs do not meet the English statutory criteria of an "admiralty" claim. *See, e.g., Flame S.A. v. M/V Lynx*, No. 10-00278, 2010 U.S. Dist. LEXIS 145880, at *10-12 (E.D. Tex. June 22, 2010).

*Vitol* did not contemplate the situation here, where federal maritime law may differ from the law of the country of the underlying dispute. Yet, the Court's reasoning is consistent with Flame's position. Contrary to Freight Bulk's interpretation of *Vitol*, nowhere did this Court suggest that foreign law should dictate the subject-matter jurisdiction analysis of the federal judiciary. For the sake of uniformity, this Court should follow the holding of *Euro Trust* and *SLS Shipbuilding*, which persuasively reject Freight Bulk's position.

The Second Circuit's decision in *Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd.*, 722 F.3d 488 (2d Cir. 2013), is particularly instructive in the instant case.[13] In *Blue Whale,* the Second Circuit held that whether a claim is properly considered a maritime claim for purposes of the applicability of Rule B—the issue before the District Court—is a purely procedural issue. 722 F.3d at 494. Thus, federal law governs the question, irrespective of the law to be applied to any

---

[13] "Because of the commercial importance of the ports of New York, there is a long history of maritime attachments in the federal courts of the Second Circuit. Reported decisions of maritime attachments and resulting suits in New York date from the middle of the nineteenth century." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 439-40 (2d Cir. 2006) *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009).

underlying claims.[14] Prior to *Blue Whale*, there was disagreement among district courts in the Second Circuit as to the applicability of federal law or foreign law when analyzing jurisdiction in a Rule B attachment proceeding. The court briefly but clearly resolved that split by stating:

> Despite the divide, what is clear is that federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty. This question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law.

*Id.* at 494 (citations omitted).

Further, as explained in *Harley Mullion & Co. v. Caverton Marine Ltd.*, No. 08-5435, 2008 U.S. Dist. LEXIS 101313 (S.D.N.Y. 2008):

> Rule B is procedural in nature and federal law applies to procedural issues even if foreign law governs the underlying claims. Accordingly, questions about the existence *vel non* of a prima facie admiralty claim should be determined by applying federal law. Many courts in this district have consistently applied federal law to determine the validity of Rule B attachments even where foreign law applies to the underlying claim.

---

[14] In *Blue Whale*, the court held that whether Blue Whale Corporation adequately pled an admiralty claim was a procedural question governed by federal maritime law because it related to the court's subject-matter jurisdiction, which was not disputed by the parties. 722 F.3d at 492.

> The Court does note that other courts in this district have held that the claim must be valid under the substantive law that will govern the underlying action. . . .

*Id.* at \*6-8 (internal citations omitted) (citing *T & O Shipping, Ltd. v. Lydia Mar. Shipping Co. S.A.*, 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) ("Rule B [attachment] is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law")).

Courts in the Fifth and Eleventh Circuits are also in harmony with the Second Circuit. For example, in *SLS Shipbuilding Co.*, the Southern District of Texas followed the prevailing view in the Southern District of New York that whether a prima facie maritime claim exists is entirely a procedural question, and, thus, federal law applies. 2011 WL 2652365, at \*2-3 (citing *Euro Trust Trading S.A.*, 2009 WL 2223581; *Wall St. Traders, Inc. v. Sociedad Espanola de Construccion Naval*, 245 F. Supp. 344, 350 (S.D.N.Y. 1964); *see Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir. 1985) ("Federal law generally governs questions as to the validity of Rule B attachments"); *Otal Invs. Ltd v. M. V. Clary*, 494 F.3d 40, 50 (2d Cir. 2007) ("the law of the forum—federal maritime law—governs

procedural law"). *See James v. M/V EAGLE EXP.*, No. 12-00423, 2012 WL 3068791 (S.D. Ala. July 27, 2012).

Freight Bulk's best case in support, *D'Amico v. Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, No. 09-07840, 2011 WL 1239861 (S.D.N.Y. Mar. 28, 2011), was squarely rejected by *SLS Shipbuilding Co.*, impliedly abrogated by *Blue Whale Corp.*, and is currently on appeal in the Second Circuit. *See SLS Shipbuilding Co.*, 2011 WL 2652365, at *4 (holding that *D'Amico* "contains limited explanation for its application of English law," and noted the *D'Amico* court's failure to cite any of the established cases contradicting its reasoning, such as *Wall St. Traders, Inc.*, *Euro Trust Trading S.A.*, and *Harley Mullion & Co.*). The District Court also noted the unpersuasiveness of *D'Amico*. J.A. 135 (commenting that *D'Amico* is a "pretty poor case").

*D'Amico* is not a Rule B case. The plaintiff in *D'Amico* sought to enforce a judgment from the English High Court in federal district court based on the "'general principle,' grounded in concerns of comity, empowering admiralty courts to enforce the decrees of foreign admiralty courts." *Id.* at *2. Judge Koeltl cited Second Circuit *dicta* stating that "an admiralty court has jurisdiction of a claim to enforce a foreign

33

judgment that is itself based on a maritime claim," *Id.* at \*3 (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987)), and then looked to English law to determine whether the English judgment is "based on a maritime claim." *Id.* In light of *D'Amico*'s contradiction of established federal law, this Court should give *D'Amico* no weight.

As the District Court's admiralty jurisdiction was properly invoked and federal courts sitting in admiralty uniformly apply federal common law to the analysis of whether a claim is a maritime claim, this Court should apply federal law, not English law, to the procedural inquiry of whether Flame's claim sounds in admiralty. Because FFA contracts are maritime contracts under U.S. federal law, as explained more fully *infra*, the District Court's Opinion holding it had subject-matter jurisdiction is consistent with courts in the Second, Fifth, and Eleventh Circuits.

## III. Forward Freight Agreements are Maritime Contracts Under Federal Law

### A. The Essence of a Maritime Contract is Maritime Commerce

Congress has granted federal district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." 28 U.S.C.

34

§ 1333(1). Because "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce," *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982), when confronted with issues of admiralty jurisdiction over contracts, courts "look to the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature." *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603 (1991) (*citing Kossick v. United Fruit Co.*, 365 U.S. 731, 735-38 (1961)).

Traditionally, a maritime contract is "[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992) (citation omitted). Although not every contract that "somehow relates to a ship or its business is considered maritime," contracts that pertain directly to and are necessary for commerce or navigation upon navigable waters traditionally have come within the federal court's admiralty and maritime jurisdiction. *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990) (citation omitted).

The vagueness of the traditional definition of a maritime contract has led courts to take a case-by-case approach to determining whether admiralty jurisdiction applies. As Justice Harlan explained in *Kossick*, "the boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." 365 U.S. at 735 n.3. As this Court succinctly put it: "Very little in the way of general principles can be extrapolated from the case law." *S.C. State Ports Auth. v. Silver Anchor, S.A., (Panama)*, 23 F.3d 842, 845-46 (4th Cir. 1994).

Freight Bulk has provided a list of some types of contracts that do not fall within the court's admiralty jurisdiction. Some examples of contracts that are maritime contracts are helpful to illustrate the boundaries of maritime contract jurisdiction. A contract for the repair of ships is traditionally treated as maritime. *Sw. Marine of San Francisco, Inc. v. United States*, 896 F.2d 532, 533 (Fed. Cir. 1990). Similarly, it has long been held that marine insurance is a maritime contract within the jurisdiction of the admiralty court. *Int'l Sea Food, Ltd. v. M/V Campeche*, 566 F.2d 482, 485 (5th Cir. 1978). Further, claims for quasi-contract for unjust enrichment also fall within the courts' admiralty

jurisdiction if the subject matter of the question involved is maritime. *Kane v. Motor Vessel Leda*, 491 F.2d 899, 900 (5th Cir. 1974).

Even contracts that do not directly involve ships have been found to be maritime contracts. For example, where a contract is maritime in nature and a party to the contract assigns its rights to a third party, the third party may sue in admiralty to enforce the original contract, even though the assignment contract itself might not be within the federal courts' admiralty jurisdiction. *Ambassador Factors v. Rhein-, Maas-, Und See- Schiffahrtskontor GMBH*, 105 F.3d 1397, 1400 (11th Cir. 1997). Contracts of personal guaranty or indemnity relating to marine ventures are generally deemed within the admiralty jurisdiction. *See, e.g.*, *Compania Maritima Ador, S.A. v. Navico A.G.*, 173 F. Supp. 839, 840 (S.D.N.Y. 1959) ("One who guarantees his principal's maritime obligation may be sued on his guarantee in admiralty.").

To remedy the difficulties in ascertaining the limits of maritime contact jurisdiction, in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004), the United States Supreme Court "modernized and expanded maritime jurisdiction by focusing on the question of whether the primary objective of the contract was maritime commerce." *Dry Handy*

37

*Invs., Ltd. v. Corvina Shipping Co. S.A.*, No. 13-00678, 2013 WL 6408388, at *2 (E.D. Va. Dec. 6, 2013). As Freight Bulk concedes, in *Norfolk Southern Railway Co.*, the U.S. Supreme Court defined the appropriate approach for determining whether a contract is maritime:

> To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case. Nor can we simply look to the place of the contract's formation or performance. Instead, the answer depends upon . . . the nature and character of the contract, and the true criterion is **whether it has reference to maritime service or maritime transactions.**

*Id.* at 23-24 (emphasis added). Thus, if the "principal objective of a contract is maritime commerce," *id.* at 25, the contract is a maritime contract and admiralty jurisdiction exists over claims involving that contract.

In accordance with the Supreme Court's ruling in *Norfolk Southern Railway Co.*, courts have amended their jurisprudence on maritime contracts, recognizing that the proper inquiry is "whether the principal objective of a contract is maritime commerce, rather than . . . whether the non-maritime components are properly characterized as more than 'incidental' or 'merely incidental' to the

38

contract." *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 315 (2d Cir. 2005). *See Vill. of Bald Head Island v. United States Army Corps of Eng'rs*, 714 F.3d 186, 196 (4th Cir. 2013) (Court focused its inquiry on whether the principal objective of a contract is maritime commerce); *Williamson v. Recovery L.P.*, 542 F.3d 43, 48-49 (2d Cir. 2008).

In addition to protecting maritime commerce, the constitutional grant of admiralty jurisdiction also was to ensure a national uniformity to the judiciary's approach to international shipping. *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186-87 (5th Cir. 2010) (citing Benedict on Admiralty § 182 (2010)). As the Supreme Court stressed in *Norfolk Southern Railway Co.,* "our touchstone is a concern for the uniform meaning of maritime contracts." 543 U.S. 14, 28. As the Court explained:

> Article III's grant of admiralty jurisdiction "must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting

> the intercourse of the States with each other or
> with foreign states."

*Id.* (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 451 (1994)). *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 210 (1996) ("[I]n several contexts, we have recognized that vindication of maritime policies demanded uniform adherence to a federal rule of decision.") It is for this reason that courts have "placed a premium" on the value of maintaining uniformity among sister circuits in cases involving the interpretation of maritime contracts. *Fortis Corporate Ins., SA v. Viken Ship Mgmt. AS*, 597 F.3d 784, 792 (6th Cir. 2010).

## B.   Forward Freight Agreements Concern Maritime Commerce

In *Brave Bulk Transp. v. Spot on Shipping Ltd.*, No. 07-04546, 2007 WL 3255823, at *1-3 (S.D.N.Y. Oct. 30, 2007), the court held that FFAs are "commitments to perform in the future a shipping service between ship owners, charterers and/or traders." The court further explained that "[i]n the shipping industry, FFAs are negotiated with the express purpose of hedging and managing market risks relating to the employment of vessels in today's volatile freight market." For the specific FFAs at issue in the case, the court found that the parties had entered into a FFA "to buy and sell a specified tonnage freight at an

40

agreed price for an agreed route and time span so that both corporations could reliably predict their ocean freight revenues and costs for the duration of the contract for those ocean routes." Thus the court was persuaded that FFA's "can fairly be said to constitute maritime contracts" and are sufficiently part of the business of maritime commerce to confer admiralty jurisdiction.

In *Flame S.A. v. Primera Mar. (Hellas) Ltd.*, No. 09-08138, 2010 WL 481075, at *1-3 (S.D.N.Y. Feb. 2, 2010), the court similarly found that the "express purpose" of FFAs is to hedge the exposure to ocean freight market risk "through the trading of specified time charter and voyage rates for forward positions." The court explained that:

> Ocean freight is the charge assessed for the carriage of cargo by a vessel and is one of the most fundamental components of maritime commerce. Freight is considered so integral to the maritime industry that it has been said that "freight earnings are a part of the vessel as much as the ship's tackle."

*Id.* (quoting *Rush v. Del. & Chesapeake S.S. Co.*, 10 F. Supp. 497, 501 (E.D. Pa. 1935)).

For the specific FFAs in question in the case, the court found that the parties had entered into a FFA for the "swap of the future value of

ocean freight" in order to "minimize the risk of fluctuating ocean freight rates for specific groups of vessels traveling identified and agreed to ocean routes." The court held that the "financial nature of these transactions does not compromise their maritime status." Thus, because maritime jurisdiction explicitly includes maritime "transactions" that relate to maritime "commerce," the court held that FFAs are "sufficiently part of the business of maritime commerce to confer admiralty jurisdiction." *Id.* at *2 (quoting *Brave Bulk*, 2007 WL 3255823, at *2). *See Armada (Sing.) Pte Ltd. v. N. China Shipping Co.*, 633 F. Supp. 2d 168, 169 (S.D.N.Y. 2009) (Parties "entered into a forward freight swap agreement . . . which is a maritime contract . . . to perform shipping services in the future. The contractors agree to pay the difference between the price of moving freight or hiring a ship today and the price of those same services at some future time.") (citing *Brave Bulk*, 2007 WL 3255823, at *2).

Disputes concerning FFAs also have been found to be maritime cases entitled to issuance of process of maritime attachment in many cases in the Southern District of New York. In *Setsea S.P.A. v. Source Link Shipping Co. Ltd.*, No. 07-04147 (S.D.N.Y. June 5, 2007), the court

initially denied the plaintiff's application for an *ex parte* order for process of maritime attachment, holding that while the FFA in question was "not so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction," it nonetheless fell short of the Second Circuit's requirement that the contract reference "maritime service or maritime transactions." *Brave Bulk*, 2007 WL 3255823, at *2 (quoting *Setsea S.P.A. v. Source Link Shipping Co. Ltd.*, No. 07-04147, Order Denying Application for Ex Parte Order (S.D.N.Y. June 5, 2007). The court allowed Setsea leave to replead within thirty days and when Setsea submitted a Verified Amended Complaint laying out more specifically the nature of forward freight agreements and why they are maritime contracts the Court granted the plaintiff's application for an *ex parte* order for process of maritime attachment finding the FFA to be a maritime contract.[15]

---

[15] The following cases in the Southern District of New York also have been found FFAs to be maritime cases entitled to issuance of process of maritime attachment: *C. Transport Panamax Ltd. v. N. Am. Steamships Ltd., a.k.a. N.A.S.L.*, No. 06-13178 (RLC); *Daeyang Shipping Co: Ltd. v. Navitrans Maritime Inc.*, No. 04-08050 (VM); *Deiulemar v. Source Link Shipping Co. Ltd*, No. 07-02983 (SAS); *Deiulemar v. Spot On Shipping Ltd.*, No. 07-03820 (VM); *Eurotrade Inc., Liberia v. Source Link*

The Southern District of New York does not stand alone in holding that FFAs are maritime contracts. In *Flame S.A. v. M/V Lynx*, No. 10-00278, 2010 U.S. Dist. LEXIS 145880, at *2-3 (E.D. Tex. June 22, 2010), the Eastern District of Texas held that FFA are maritime contracts and, therefore, because it had admiralty jurisdiction, denied defendant's motion to vacate the order of the arrest of a vessel in aid of a judgment already recognized by the district court in the Southern District of New York. The Texas court considered the same FFA as was presented to the court in *Flame S.A. v. Primera Mar. (Hellas) Ltd.*, 2010 WL 481075, at *1-3.

The Texas court considered the evidence anew and concluded that the FFA in question was a contract which provided for payments to be made depending on movements in the rates that were published for certain ocean shipping routes by the Baltic Exchange, an organization that provides independent daily shipping market information like freight market prices and maritime shipping costs. The court held that

---

*Shipping Co. Ltd., BVI*, No. 07-3172 (SAS); *Pan Oceanic Maritime Inc. v. Source Link Shipping Co. Ltd.*, No. 07-3089 (CM); *Perseveranza Di Navigazione S.P.A. v. Source Link Shipping Co. Ltd.*, No. 07-3091 (RPP); and *Taiwan Maritime Transport Co. Ltd. v. Navitrans Maritime Inc. and Navigation Maritime Inc.*, No. 06-13564 (RJH).

44

the "very essence" of an FFA is to "facilitate the carriage of goods in a ship." Thus, the court held that the nature of the FFA is maritime and, therefore, the action to attach the vessel in satisfaction of a judgment on that contract is within the court's admiralty jurisdiction.

In two recent court opinions the Eastern District of Louisiana also held that FFA contracts are maritime contracts. In *Transfield ER Futures Ltd. v. Deiulemar Shipping S.P.A.*, Nos. 11-00099, 11-00754, 2012 WL 123286, at *3 (E.D. La. Jan. 17, 2012), the court held that "the very essence of these FAAs concerns commitments to perform shipping services in the future. . . Clearly, these Forward Freight Agreements can fairly be said to be maritime contracts." In *Bulk Trading S.A. v. Capex Eur. S.A.M.*, No. 10-00297, 2011 WL 1088762, at *2-3 (E.D. La. Mar. 22, 2011), the court followed the other courts that have considered the question and held that FFAs are "sufficiently part of the business of maritime commerce to confer admiralty jurisdiction." *Id.* at *3.

As noted above, the majority of courts that have dealt directly with the issue of whether FFAs are maritime in nature have answered in the affirmative. As fully explained in the numerous cases holding FFAs are maritime contracts, FFAs, such as the ones at issue here, are

45

directly linked to maritime service and transactions. The FFAs at issue here specified the types of vessels and the shipping routes the vessel would follow and are identical to the FFAs considered by the courts in *Flame S.A. v. Primera Mar. (Hellas) Ltd.*, *Flame S.A. v. M/V Lynx*, and *Bulk Trading S.A. v. Capex Eur. S.A.M.* Thus, they are clearly maritime contracts falling squarely within the district court's maritime jurisdiction.

The courts that have found FFAs to be maritime contracts, the Southern District of New York, the Eastern District of Texas and the Eastern District of Louisiana are home to three of the largest ports in the United States and are well versed in admiralty matters. Their decisions on matters of maritime commerce should be considered persuasive.

Additionally, a holding by this Court that FFAs are not maritime contracts would put it at odds with the courts of three sister circuits, impairing the uniformity of the federal courts in matters of international shipping.

## C. Freight Bulk's Contrary Arguments are Not Persuasive

Freight Bulk relies on three cases to support its position that FFAs are not maritime contracts. None of these cases, however, are persuasive.

The district court's holding in *D'Amico v. Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, No. 09-07840, 2011 WL 1239861 (S.D.N.Y. Mar. 28, 2011), is addressed above. *D'Amico* is not directly applicable to the present dispute because it did not concern Rule B or any other provision of the Supplemental Maritime Rules, and the court failed to even mention, let alone distinguish, any other Southern District of New York cases to the contrary.

*Pioneer Freight Futures Co. v. Marine Trade S.A.*, No. 11-10313, 2011 U.S. Dist. LEXIS 157971 (C.D. Cal. Dec. 20, 2011), is similarly unpersuasive. *Pioneer Freight* relies solely on *D'Amico* for its holding and, thus, the court's reasoning is incongruous with and implicitly abrogated by the Second Circuit's more persuasive holding in *Blue Whale*.

Finally, *Farenco Shipping Co. v. Farenco Shipping Pte Ltd.*, No. 12-02544, 2012 WL 5614999 (E.D. La. Nov. 15, 2012), is clearly

distinguishable on the basis that plaintiff was not suing to enforce or void an FFA, or to recover for its breach. The aggrieved parties to the FFAs in *Farenco* were not even parties to the lawsuit, and the FFAs were not the subject of the litigation. *Id.* at *2-3. More importantly, the holding in *Farenco* concerning FFAs is mere *dicta*, while two well-reasoned opinions from the Eastern District of Louisiana—which the court in *Farenco* does not mention—directly addressed the issue of FFAs and held that they were maritime contracts. *See Transfield ER Futures Ltd.*, 2012 WL 123286, at *3; *Bulk Trading S.A.* 2011 WL 1088762, at *2-3.

## CONCLUSION

The Order of the District Court should be affirmed.

Respectfully submitted,

/s/ William R. Bennett III
William R. Bennett III
Alan M. Weigel
Lauren B. Wilgus
Nicholas R. Tambone
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

*Attorneys for Plaintiff-Appellee*
*Flame S.A.*

April 4, 2014

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2007 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

I also certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,952 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(a)(7(B)(iii), according to the count of Microsoft Word.

Dated:   New York, New York
         April 4, 2014

/s/ William R. Bennett III
William R. Bennett III

50

## CERTIFICATE OF SERVICE

I certify that on April 4, 2014, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I also certify that I will cause eight (8) paper copies of this brief to be filed with the Court by hand-delivery.

The participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Dated:   New York, New York
         April 4, 2014

                              /s/ William R. Bennett III
                                  William R. Bennett III

51